**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TRI-UNION SEAFOODS, LLC,

               *Plaintiff*,

     v.

ECUATORIANITA IMPORT & EXPORT
CORP, and MI TIERRA FOODS, LLC,

               *Defendants*.

Civil Action No. 20-9537

**OPINION**

**John Michael Vazquez, U.S.D.J.**

### I.    INTRODUCTION

This matter comes before the Court on Tri-Union Seafoods, LLC's unopposed motion for default judgment against Ecuatorianita Import & Export Corp. and Mi Tierra Foods, LLC under Federal Rule of Civil Procedure 55(b)(2). D.E. 22. The Court reviewed all submissions made in support of the motion[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED**.

---

[1] Plaintiff's brief in support of its motion for default judgment will be referred to as "Br.," D.E. 23.

## II.      FACTS AND PROCEDURAL HISTORY[2]

Plaintiff Tri-Union Seafoods, LLC is a California limited liability company.  Compl. ¶ 11. Plaintiff owns and exclusively distributes VAN CAMP'S® canned fish products in the United States; it also owns the  VAN CAMP'S® trademark.  *Id.* ¶ 12.  Defendants are importers, purchasers, distributors, and sellers of infringing VAN CAMP'S® tuna products.  *Id.* ¶ 1. Defendant Ecuatorianita Import & Export Corp. ("Ecuatorianita") is a New Jersey corporation, and Defendant Mi Tierra Foods, LLC ("Mi Tierra") is a New Jersey limited liability company.  *Id.* ¶¶ 13, 15, 17.  Defendants are each "involved in the intentional purchase, sale and/or other distribution of Infringing Tuna in the District of New Jersey and nationwide."  *Id.* ¶¶ 14, 16, 18. Further, Defendants are part of the same supply and distribution chain involving the infringing tuna.  *Id.* ¶ 19.[3]

For over fifty years, Plaintiff and its predecessor in interest have manufactured, sold, marketed, promoted, and distributed VAN CAMP'S® canned fish in the United States.  *Id.* ¶ 25. VAN CAMP'S® Tuna is exclusively manufactured and imported into the United States, and subject to Plaintiff's quality control standards.  *Id.* ¶ 24.  If the tuna meets these standards, Plaintiff distributes it to wholesale stores and retailers throughout the United States through its exclusive United States distributor.  *Id.* ¶ 26.  Retail stores then sell VAN CAMP'S® Tuna to customers.  *Id.* ¶ 27.

---

[2] The facts of this matter derive from the Complaint ("Compl."), D.E. 1, which the Court accepts as true for purposes of this motion for default judgment.  *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011).

[3] A third Defendant, Mega Products LLC ("Mega") appeared in this action and responded to the Complaint.  D.E. 8, 15.  On November 5, 2020, Plaintiff and Mega filed a stipulation of dismissal with prejudice, D.E. 29, and on November 12, 2020, the Court entered an order dismissing Plaintiff's claims as against Mega, D.E. 30.

Plaintiff owns the federally registered VAN CAMP'S® trademark, U.S. Registration No. 674,288, which "appears alone or in combination on all authentic VAN CAMP'S® canned fish Plaintiff distributes in the United States." *Id.* ¶ 28. Plaintiff has developed substantial goodwill and a reputation among consumers in the United States through the sales history of VAN CAMP'S® Tuna and the longevity of the brand. *Id.* ¶ 30.

Defendants buy and sell infringing tuna in look-alike packaging, which contains infringing and counterfeit versions of the VAN CAMP'S® Trademark (the "Infringing Tuna"). *Id.* ¶ 33. This creates the false commercial impression that the Infringing Tuna is Plaintiff's product. *Id.* The Infringing Tuna does not originate with Plaintiff, is not made with Plaintiff's permission or under any license from Plaintiff, and is not made with authority to use Plaintiff's VAN CAMP'S® trademark. *Id.* ¶ 34. In several important ways, the Infringing Tuna differs from Plaintiff's authentic VAN CAMP'S® Tuna: it contains different ingredients; the nutrition fact panel is in Spanish; the net weight and drain weight declared on the label deviate from the United States Food and Drug Administration's ("FDA") standard of identity for canned tuna; it omits Vitamin D and Potassium nutrient values; it has a different serving size; and it is packaged, processed, and caught differently. *Id.* ¶ 35. The Infringing Tuna also indicates that it has 10 grams of added sugar; authentic VAN CAMP'S® Tuna does not. *Id.* ¶ 56. While Plaintiff's VAN CAMP'S® Tuna is subject to strict and exacting quality control standards and stored and sold under known conditions, the Infringing Tuna is not. *Id.* ¶¶ 36-37. As a result, Plaintiff cannot confirm the quality of the Infringing Tuna's ingredients, and consumers cannot verify that any particular product they purchase will meet their expectations for VAN CAMP'S® Tuna. *Id.* ¶ 38.

The Infringing Tuna is manufactured in Ecuador by Inepaca Industria, and Defendants' conduct is willful. *Id.* ¶¶ 39-40. Plaintiff learned that Defendants were offering the Infringing

Tuna for sale at their distribution and retail locations in New Jersey ("Stores") and that at their Stores, Defendants presented the Infringing Tuna – which bears the counterfeit VAN CAMP'S® Trademark – next to Plaintiff's VAN CAMP'S® Tuna.  *Id.* ¶¶ 41-43.  Further, the Infringing Tuna bears Spanish text in the Nutritional Fact Panel; Defendants placed stickers over this panel with a Nutritional Fact Panel using English text.  *Id.* ¶ 44.  The English Nutritional Fact Panel states that the product is "IMPORTED & DISTRIBUTED BY: Mega Products LLC."  *Id.* ¶ 46.  The Infringing Tuna also includes a phone number and email address consumers are directed to contact about the product; the contacts are not owned, operated, or controlled by Plaintiff.  *Id.* ¶ 48.

Defendants are professional sellers of various food products and, therefore, should be aware of United States labeling requirements, with which the Infringing Tuna fails to comply.  *Id.* ¶¶ 50-51.  Issues with the Infringing Tuna labels include an incorrect serving size; incorrect nutritional values based upon a 120 gram serving size; a lack of Vitamin D and Potassium values; a net weight and drain weight that deviate from the FDA standard of identity for canned tuna and temporary marking permit ("TMP"), pursuant to 21 C.F.R. § 161.190; a failure of the product's declared weight to comply with the TMP; and a failure to use both the metric system (*e.g.*, grams) and the U.S. Customary System (*e.g.,* ounces) for the net contents.  *Id.* ¶¶ 52-53.  Defendants' products do not meet the FDA's standard of identity for canned tuna.  *Id.* ¶ 54.  As a result of these deficiencies, consumers are likely to be deceived.  *Id.* ¶ 55.  In addition, by purchasing the Infringing Tuna, consumers obtain less tuna fish than they would if they purchased Plaintiff's VAN CAMP'S® Tuna.  *Id.*

Defendants also knew or should have known that Plaintiff was the exclusive source and distributor of VAN CAMP'S® Tuna.  *Id.* ¶ 57.  As demonstrated by the label on the Infringing Tuna indicating the product was manufactured by Inepaca Industria, Defendants did not obtain the

Infringing Tuna from Plaintiff or any other authorized source.  *Id.* ¶ 58.  Thus, Defendants recognized that the Infringing Tuna did not originate from Plaintiff and, because of the labeling and distribution differences between the products, also recognized that the Infringing Tuna was not authentic.  *Id.* ¶¶ 59-61.  Defendants purchased, sold, and distributed the Infringing Tuna with knowledge that Plaintiff had rights in VAN CAMP'S® Tuna, the Infringing Tuna was counterfeit, and the Infringing Tuna would damage Plaintiff in the marketplace.  *Id.* ¶ 62.

Plaintiff is damaged by the Infringing Tuna because consumers who purchase it are less likely to think favorably of Plaintiff than they would have if they purchased authentic VAN CAMP'S® Tuna.  *Id.* ¶ 64.  Consumers who purchase and have negative experiences with the Infringing Tuna may not purchase authentic VAN CAMP'S® Tuna in the future. *Id.* ¶ 65.  Plaintiff has also been deprived of its right to control the quality and safety of products that appear to be sold under its brand. *Id.* ¶ 66.  Plaintiff has suffered, and will continue to suffer, economic damages and irreparable harm to the value, reputation, and goodwill of its VAN CAMP'S® brand.  *Id.* ¶ 67.

Plaintiff sent "multiple cease and desist letters in an effort to stop Defendants from importing, distributing and selling" the Infringing Tuna but, despite these requests, Defendants continued to sell it. *Id.*  ¶ 6.  Plaintiff then filed its Complaint on July 28, 2020, alleging trademark infringement and unfair competition.  D.E. 1.  The Complaint includes seven claims: Count One alleges federal trademark counterfeiting in violation of 15 U.S.C. § 1114; Count Two alleges federal trademark infringement in violation of 15 U.S.C. § 1114; Count Three alleges false advertising in violation of 15 U.S.C. § 1125(a); Count Four alleges false designation of origin, unfair competition, and trademark infringement in violation of 15 U.S.C. § 1125(a); Count Five alleges trademark infringement under the New Jersey Trademark Act, N.J. Stat. Ann. § 56:3-13a,

*et seq.*; Count Six alleges unfair competition under the New Jersey Unfair Competition Act, N.J. Stat. Ann. § 56:4-1, *et seq.*; and Count Seven alleges trademark infringement under the New Jersey common law.  Compl. ¶¶ 68-123.  On September 3, 2020, Plaintiff filed a request for entry of default against Ecuatorianita and Mi Tierra for failure to plead or otherwise respond, D.E. 13, and the Clerk entered default on September 8, 2020.  Plaintiff then filed the present motion for default judgment.  D.E. 22.  In its motion for default judgment, Plaintiff seeks a permanent injunction, statutory damages, and attorneys' fees and costs.  *Id.*  D.E. 22-1.

### III.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure permits a court to enter a default judgment against a properly served defendant who fails to respond.  *Anchorage Assoc. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).  "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir.2005)).  "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'"  *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering a default judgment, the court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages."  *Moroccanoil, Inc. v. JMG Freight Grp.*

*LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). The Court must also consider the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 Fed. App'x 519, 522 (3d Cir. 2006).

### IV.   ANALYSIS

#### A.   Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (internal quotation omitted)). The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's Lanham Act claims pursuant to 15 U.S.C. § 1121 and trademark claims pursuant to 28 U.S.C. § 1338(a). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's claims arising under New Jersey law because these claims arise from the same case or controversy as Plaintiff's federal claims.

The Court has general personal jurisdiction over Defendants. "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (alteration in original) (internal quotation omitted). "Courts have applied the *Daimler* rules to limited liability companies with 'equal force.'" *Griggs v. Swift Transp. Co.*, No. 17-13480, 2018 WL 3966304, at *2 (D.N.J. Aug. 17, 2018). Therefore, "for the purposes of general personal jurisdiction, a limited liability

company's citizenship is that of its principal place of business and state of [formation]." *Rodriquez Rivera v. Loto Grp., LLC*, No. 20-4062, 2020 WL 7384720, at *1 (D.N.J. Dec. 16, 2020) (alterations in original) (quoting *Hannah v. Johnson & Johnson Inc.*, No. 18-10319, 2020 WL 3497010, at *16 (D.N.J. June 29, 2020)).  Here, Ecuatorianita is a New Jersey corporation and Mi Tierra is a New Jersey limited liability Company.  Compl. ¶¶ 13, 15.  Because New Jersey is "home" to both Ecuatorianita and Mi Terra, this Court retains personal jurisdiction over both Defendants.  *Audi AG v. Posh Clothing, LLC*, No. 18-14254, 2019 WL 1951166, at *2 (D.N.J. May 2, 2019).

Additionally, the Court has specific personal jurisdiction over Defendants.  "Specific jurisdiction is attained when the controversy is related to or 'arises out of' a defendant's contacts with the forum." *Carter Ledyard & Milburn LLP v. Carrascosa*, No. 07-3216, 2010 WL 4609501, at *3  (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Courts employ a three-part inquiry to determine whether specific personal jurisdiction exists.  *Ross Univ. Sch. of Med. v. Amini*, No. 13-6121, 2014 WL 29032, at *5 (D.N.J. Jan. 2, 2014).  "First, the defendant must have 'purposefully directed his activities' at the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  "Second, the plaintiff's claim must 'arise out of or relate to' at least one of those specific activities." *Id.* (quoting *Helicopteros*, 466 U.S. at 414). "Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (alteration in original) (quoting *Burger King*, 471 U.S. at 476)).  Here, Defendants "purposefully directed [their] activities" at New Jersey because they purchased, sold, and distributed Infringing Tuna in New Jersey.  Compl. ¶¶ 16, 18. Plaintiff's claims directly arise out of this activity in the forum state.  And finally, asserting

jurisdiction in a New Jersey court over Defendants does not offend traditional notions of "fair play and substantial justice" because Defendants' challenged conduct occurs in the state.

### B.  Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co.*, Inc., 756 F.2d 14, 19 (3d Cir. 1985)).  As a limited liability company, Mi Tierra could be properly served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]"  Fed. R. Civ. P. 4(h)(1)(B).  Mi Tierra was served on July 31, 2020 by leaving a copy of the summons and complaint with a manager.  D.E. 5 at 1.  Service on Ecuatorianita is valid under the same provision.  On July 31, 2020, a copy of the summons and complaint was left with a person authorized to accept service on the corporation's behalf.  D.E. 5 at 3.  Therefore, service was proper on both Defendants.

### C.  Sufficiency of Plaintiff's Causes of Action

Next, the Court must determine whether the Complaint adequately states a cause of action. The Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages.  *Chanel, Inc.*, 558 F. Supp. 2d at 535-36.

#### 1.  Federal Trademark Infringement and False Designation of Origin/Unfair Competition (Counts Two and Four)

Count Two alleges trademark infringement in violation of 15 U.S.C. § 1114 and Count Four alleges false designation of origin, unfair competition, and trademark infringement in violation of 15 U.S.C. § 1125(a).  § 1114(1)(a) provides in relevant part that

> [a]ny person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or

> in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant[.]

15 U.S.C. § 1114(1)(a).  § 1125(a)(1)(A), in turn, provides in relevant part that

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

Federal trademark infringement and federal unfair competition/false designation of origin claims are measured by identical standards.  *Primepoint, L.L.C. v. Primepay, Inc.*, 545 F. Supp. 2d 426, 431-32 (D.N.J. 2008) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir.2000)).  To establish these claims, "the record must demonstrate that plaintiff (1) has a valid and legally protectable mark; (2) owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."  *Chanel*, 558 F. Supp. 2d at 536.  "The first two requirements are satisfied when a federally registered mark has become incontestable" which means that "the owner has filed affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there has been no adverse decision concerning the registrant's ownership or right to registration."  *Id.*  The third factor exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991).

Here, Plaintiff has demonstrated that it owns a valid and legally protectable registered trademark for VAN CAMP'S (U.S. Reg. No. 674,288). D.E. 1-2; Compl. ¶¶ 28-29. Plaintiff has further demonstrated that Defendants offered tuna for sale bearing a counterfeit VAN CAMP'S® mark, which is likely to cause confusion. The Third Circuit has set forth ten factors that a district court must consider "in determining whether a defendant's use of a trademark is likely to cause confusion. . . . However, when goods are directly competing and the marks are clearly very similar, . . . 'a district judge should feel free to consider only the similarity of the marks themselves.'" *Lorillard Tobacco Co. v. Asian Am. Mkt.*, No. 06-948, 2007 WL 1217966, at *3 (D.N.J. Apr. 23, 2007) (quoting *A & H Sportswear, Inc.*, 237 F.3d at 213. Here, the goods are directly competing, and at the Stores, the Infringing Tuna is placed beside authentic VAN CAMP'S® Tuna. Compl. ¶ 42. Plaintiff's Complaint includes photographs of both authentic VAN CAMP'S® Tuna, *id.* ¶ 31, and the Infringing Tuna, *id.* ¶ 45. The marks are similar, except for their color – the authentic VAN CAMP'S® mark uses a black and white color scheme, while the Infringing Tuna uses blue and white – and the presence of the word "Lomitos" near the mark on the Infringing Tuna. *See id.* ¶¶ 31, 45. The Court finds that the marks used are very similar and, therefore, are likely to cause consumer confusion. Plaintiff has stated a claim for both federal trademark infringement under 15 U.S.C. § 1114, as well as false designation of origin, unfair competition, and trademark infringement under 15 U.S.C. § 1125(a).

### 2. Federal Trademark Counterfeiting (Count One)

The Complaint also charges Defendants with federal trademark counterfeiting in violation of 15 U.S.C. § 1114. "To establish trademark counterfeiting . . . the record must show (1) the defendant infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (2) the defendant intentionally used the trademark knowing it was counterfeit or was willfully

blind to such use." *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *3 (D.N.J. June 14, 2010).   "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit."   *Id.* (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536-37 (D.N.J. 2008)).

As discussed, Plaintiff has stated a cause of action for federal trademark infringement; therefore, the Court considers whether Plaintiff sufficiently alleged that Defendant's use of the counterfeit mark was knowing.   Plaintiff indicates that, after it sent "multiple" cease and desist letters, Defendants continued to sell the Infringing Tuna.   Compl. ¶ 6.   The Complaint also alleges that Defendants are professional sellers of tuna and, as such, should have been aware of U.S. labeling requirements for tuna.   Compl. ¶¶ 50-51.   Plaintiffs continue that Defendants should have known that the Infringing Tuna was not made by Plaintiff because they did not buy the Infringing Tuna from Plaintiff or another authorized source and the Infringing Tuna indicated that it was imported and distributed by Mega Products LLC.   *Id.* ¶¶ 46, 58.   Defendants also displayed the Infringing Tuna on shelves next to authentic VAN CAMP'S® Tuna.   *Id.* ¶ 42.   Plaintiff has stated a claim for federal trademark counterfeiting.

### 3.   False Advertising (Count Three)

Plaintiff brings a claim for false advertising in violation of 15 U.S.C. § 1125(a).   To prove false advertising under the Lanham Act, plaintiffs must show the following:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled

> in interstate commerce; and 5) that there is a likelihood of injury to
> the plaintiff in terms of declining sales, loss of good will, etc.

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) (quoting

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir.2011) (alteration in

original)).

Plaintiff claims that "Defendants have made false or misleading statements concerning

their Infringing Tuna in that the product does not meet the standard of identify for 'canned tuna'

set by the [FDA]." Br. at 19; Compl. ¶¶ 52-54. Plaintiff alleges that Defendants place English

language labels on the Infringing Tuna and that information on the nutrition label is false. *Id.* ¶¶

44, 52-56. For example, the labels contain false statements about the product's serving size and

the nutritional values per 120-gram serving size. *Id.* ¶ 52. Plaintiff has alleged that these false

statements are likely to deceive consumers and be material to consumer purchasing decisions

because "consumers are obtaining less tuna fish if purchasing Defendants' Infringing Tuna than

they could have obtained if they purchased Tri-Union's authentic VAN CAMP'S® Tuna." *Id.* ¶

55. The Infringing Tuna is alleged to have traveled in interstate commerce, as it was imported

from Ecuador. *Id.* ¶¶ 39, 41, 58. Finally, Plaintiff has indicated that it is damaged in the

marketplace because the Infringing Tuna is being sold in violation of its trademark rights. *Id.* ¶

62. Plaintiff has stated a claim for false advertising.

### 4.  New Jersey State Law Claims (Counts Five, Six, and Seven)

Plaintiff argues that it has sufficiently plead its New Jersey state law causes of action

because in Lanham Act cases, liability under federal law is sufficient to establish liability under

state law. Br. at 20-21. "The requirements for a successful claim under the New Jersey Trademark

Act, [N.J. Stat. Ann §] 56:4-1 or trademark infringement under New Jersey common law are the

same" as the requirements for a false designation of origin claim under the Lanham Act. *Novartis*

*Consumer Health, Inc. v. McNeil-PPC, Inc.*, No. 99-280, 1999 WL 707721, at *4 (D.N.J. Sept. 13, 1999).  "A claim for unfair competition under the New Jersey Unfair Competition Act, [N.J. Stat. Ann. §] 56:4-1, *et seq.*, tracks federal law" and a Plaintiff must satisfy the same elements as a claim for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).  *Adams Techs. LLC v. Well Shin Tech. Co.*, No. 18-10513, 2020 WL 2125007, at *2 (D.N.J. May 5, 2020).  Because the Court determined that Plaintiff stated claims under its federal counterparts, the Court also finds that Plaintiff stated a claim for trademark infringement under the New Jersey Trademark Act, the New Jersey common law, and for unfair competition under the New Jersey Unfair Competition Act.

### D.  Default Judgment Factors

Before ordering a default judgment, district courts must determine the appropriateness of the judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default.  *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *2 (D.N.J. July 24, 2015).

First, in the absence of a default judgment, Plaintiff has no other means to seek relief for the harm Defendant caused and is causing by selling the Infringing Tuna.  Defendants' conduct risks damage to Plaintiff's business reputation and good will.  Consequently, Plaintiff will be prejudiced if default judgment is not entered.  *See Int'l Union of Painters v. Andrews Window Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016).  Second, Defendants have never participated in this matter – they never filed answers or otherwise responded to the Complaint.  Thus, "Defendant[s] ha[ve] put forth no evidence or facts containing any information that could provide the basis for a meritorious defense."  *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3.  Additionally, it does not appear that a litigable defense is available because Plaintiff

provided evidence demonstrating that it owns the VAN CAMP'S® Trademark and that Defendants are using a non-authorized, confusingly similar mark.  Finally, Defendants' failure to appear in this matter permits the Court to draw an inference of culpability on their part.  *See Int'l Union of Painters*, 2016 WL 3234516, at *3.  As a result, the Court finds that default judgment is warranted.

### E.  Damages

While the factual allegations of the Complaint "will be taken as true," the amount of damages must still be proven.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Further, courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment.  *Paniagua Grp., Inc. v. Hospitality Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016).  Plaintiff seeks statutory damages under the Lanham Act in the amount of $25,000 per Defendant, as well as attorneys' fees and costs.  Br. at 23-25.

### 1.  Statutory Damages

In cases involving the use of a counterfeit mark under the Lanham Act, a Plaintiff can elect to recover statutory damages instead of actual damages.  15 U.S.C. § 1117(c).  A Plaintiff may recover "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just"; or "(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  *Id.* Willful conduct "consists of more than the accidental encroachment of another's rights.  It involves an intent to infringe or a deliberate disregard of a mark holder's rights."  *N.V.E., Inc. v. Day*, No. 07-4283, 2009 WL 2526744, at *3 (D.N.J. Aug. 18, 2009) (quoting *SecuraComm Consulting Inc.*

*v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), *superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171 (3d Cir.2005)).

The Court concludes that Plaintiff has established that Defendants' conduct was willful. After sending multiple cease and desist letters, Defendants continued to sell the Infringing Tuna. *Id.* ¶ 6. Additionally, "because Defendant[s] wholly failed to respond to Plaintiff's Complaint and Motion, 'the Court can infer that the trademark infringement was indeed willful.'" *InnovAsian Cuisine Enters. v. Innovasian Taco*, No. 19-16296, 2020 WL 3969917, at *7 (D.N.J. July 14, 2020) (quoting *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. 08-4248, 2009 WL 1687484, at *7). As a result, Plaintiff may recover "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

"In general, statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringer's control and is not disclosed." *Delta Air Lines, Inc. v. Fly Tech, LLC*, No. 16-2599, 2018 WL 1535231, at *3 (D.N.J. Mar. 29, 2018) (quoting *AARP v. Sycle*, 991 F. Supp. 2d 224, 230 (D.D.C. 2013) (internal quotation omitted)). "The Lanham Act does not provide guidelines for courts to use in determining an appropriate award, but instead leaves it to each court's discretion to award an amount it considers just." *Id.* (internal quotations and citations omitted). However, "[b]ecause statutory damages are meant to serve as a substitute for actual damages the Court should discern whether the requested damages 'bear some relation to the actual damages suffered.'" *Id.* (alteration in original) (quoting *Coach*, 2011 WL 1882403, at *6).

As noted, Plaintiff seeks $25,000 in statutory damages against each Defendant. Plaintiff alleges it suffers irreparable harm from Defendants' willful misconduct because the quality of the

Infringing Tuna is inferior to authentic VAN CAMP'S® Tuna and consumers who purchase the Infringing Tuna may be dissatisfied and think less favorably of VAN CAMP'S® Tuna.  Compl. ¶¶ 63-65.  Plaintiff continues that the Infringing Tuna deprives Plaintiff of its absolute right to control the quality and relative safety of the products apparently sold under the VAN CAMP'S® brand.  *Id.* ¶ 66.  Plaintiff is unable to establish the size and scope of Defendants' operation due to their failure to respond to the Complaint but submits that Defendants operate business "closer to the wholesale variety" than a single storefront operation.  Br. at 24.  As a result of Defendants' failure to respond, Plaintiff cannot provide an estimation of its actual damages.  However, Plaintiff asks for $25,000 in damages against each Defendant – a figure significantly below the $2 million statutory maximum.  The Court finds this request reasonable and grants Plaintiff $25,000 in statutory damages against each Defendant.

### 2.  Attorneys' Fees and Costs

Plaintiff also seeks attorneys' fees and costs.  "The Lanham Act entitles a plaintiff who prevails in an action for trademark infringement, brought under 15 U.S.C. § 1125(a) or (d), or for willful infringement, pursuant to 15 U.S.C. § 1125(c), to recover the costs of the action."  *Delta Air Lines*, 2018 WL 1535231, at *5 (citing 15 U.S.C. § 1117(a)).  The statute also provides that reasonable attorney fees may be awarded to the prevailing party "in exceptional cases." 15 U.S.C. § 1117(a).  "'Exceptional' has been interpreted by the Court to mean an action involving culpable conduct."  *Delta Air Lines*, 2018 WL 1535231, at *5 (citing *Securacomm Consulting, Inc.*, 224 F.3d at 280).  Here, because Defendants' conduct was willful, the Court will award both the costs of the action as well as reasonable attorneys' fees to Plaintiff.  *Id.*; *Coach*, 2011 WL 1882403, at *9.  The amount will be determined by the Court upon Plaintiff's filing of a certification concerning the total among of fees and costs.

### F.  Permanent Injunction Factors

In addition to monetary damages, Plaintiff also seeks a permanent injunction.  A court may issue a permanent injunction in the context of a default judgment if a plaintiff establishes the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Moreno v. Tringali*, No. 14-4002, 2017 WL 2779746, at \*11 (D.N.J. June 27, 2017) (quoting *E.A. Sween Co., Inc. v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 576 (D.N.J. 2014)).

Under the first and second elements, Plaintiff needs to demonstrate proof of "actual or imminent harm which otherwise cannot be compensated by money damages."  *Frank's GMC Truck Ctr. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988).  An injury adequately compensable by money damages is not an irreparable injury.  *Id.*  Moreover, a risk of injury is not enough – there needs to be a showing of "immediate irreparable injury," or a "presently existing actual threat."  *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994).  Irreparable injury includes loss of control of reputation, loss of trade, and loss of good will.  *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990).  Plaintiff has shown irreparable harm because it suffers injury to its goodwill and a loss of control of its reputation through Defendants' infringing conduct; this harm is imminent because the infringing conduct is apparently ongoing. As for the second element, Plaintiff argues that, as a result of Defendants' actions, it is unable to control the reputation of its VAN CAMP'S® Trademark, and the Trademark's goodwill has been damaged.  Br. at 22.  "Within the Third Circuit, courts have found that injury to goodwill . . . [is] [a] the type[] of injur[y] which would constitute irreparable harm that cannot be compensated with

money damages." *Isr. Disc. Bank. of N.Y. v. H.N. Int'l Grp., Inc.*, No. 16-6258, 2016 WL 6023155, at *4 (D.N.J. Oct. 14, 2016) (quoting *Fisher Bioservices, Inc. v. Bilcare, Inc.*, No. 06-567, 2006 WL 1517382, at *20 (E.D. Pa. May 31, 2006) and citing other cases).  Plaintiff also satisfies the second element.

Next, the Court must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted.  *See TD Bank N.A. v. Hill*, 928 F.3d 259, 283-84 (3d Cir. 2019).  Here, the harm that Defendants will incur if the injunction is granted is outweighed by the harm to Plaintiff if the injunction is not granted.  If a permanent injunction is issued, Defendants will be prohibited from continuing to infringe upon the VAN CAMP'S® Trademark.  As a result, the Court concludes that the harm to Defendants is at best negligible – they are required to stop violating Plaintiff's trademark rights.  On the other hand, the harm to Plaintiff's good will and reputation will continue absent an injunction.

Finally, the public interest favors the injunction. The public has an interest in not being confused between Authentic VAN CAMP'S® Tuna and the Infringing Tuna.  Additionally, the Infringing Tuna contains false statements and does not comport with FDA labeling requirements.  Finally, the public has an interest in seeing the trademark statutes and related laws upheld.

The Court, therefore, grants Plaintiff's default judgment via a permanent injunction.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment (D.E. 24) is **GRANTED**.  An appropriate Order accompanies this Opinion.

Dated:       April 20, 2021

John Michael Vazquez, U.S.D.J.